# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAWNA MALLOW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-01172-PRW |
| | ) |
| ETHICON, INC., and JOHNSON & JOHNSON. | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants Ethicon, Inc. and Johnson & Johnson's Supplemental Motion for Summary Judgment (Dkt. 121). For the reasons given below, the Defendants' Supplemental Motion is **GRANTED**.

### *Background*

In October of 2010, Dawna Mallow was examined by Dr. Jeffrey Smith, a gynecologist who specializes in gynecologic oncology. Dr. Smith diagnosed Ms. Mallow with numerous medical conditions relating to pelvic organ prolapse (organs moved or dropped from a normal anatomical position due to loss of support in the pelvis). On November 29, 2010, Dr. Smith performed an extensive surgery on Ms. Mallow to correct the pelvic organ prolapse. During this surgery, Dr. Smith implemented Ethicon, Inc.'s Gynecare Prosima device to repair and reconstruct the prolapse. The Gynecare Prosima device—manufactured by Johnson & Johnson and its wholly-owned subsidiary, Ethicon— is a surgical pelvic mesh "kit" comprised of polypropylene mesh that surgeons implant into

1

patients to assist reparative prolapse surgeries and to provide permanent structural support inside the pelvis.

After the surgery, Ms. Mallow missed several follow-up appointments and never returned to see Dr. Smith. Approximately one year later, on October 13, 2011, Ms. Mallow complained to her primary healthcare provider that she was experiencing pelvic pain, dyspareunia (pain with intercourse), and dysuria (pain with urinating).[1] Nearly three years later, on August 5, 2014, Ms. Mallow reported that the "mesh fell out"[2] and decided to seek "cop[ies] of medical records to go to an attorney for use of mesh during surgery."[3]

Over two years later, on August 23, 2016, Ms. Mallow sued Ethicon, Johnson & Johnson, and American Medical Systems, Inc. Her lawsuit joined an ongoing multi-district litigation case, *In re: Ethicon, Inc., Pelvic Repair System Products Liability Litigation*, 2:12-md-2327, which was consolidated in the U.S. District Court for the Southern District of West Virginia. In her Short Form Complaint (Dkt. 1), Ms. Mallow raised seventeen separate counts.[4] After three years of litigation, Ms. Mallow and American Medical Systems settled, resulting in American Medical Systems' dismissal from the case.

---

[1] *See* Office Visit Notes (Dkt. 121, Ex. 3), at 5–6.
[2] *See* Office Visit Notes (Dkt. 121, Ex. 4), at 2.
[3] *See id.*
[4] Count I – Negligence; Count II – Strict Liability, Manufacturing Defect; Count III – Strict Liability, Failure to Warn; Count IV – Strict Liability, Defective Product; Count V – Strict Liability, Design Defect; Count VI – Common Law Fraud; Count VII – Fraudulent Concealment; Count VIII – Constructive Fraud; Count IX – Negligent Misrepresentation; Count X – Negligent Infliction of Emotional Distress; Count XI – Breach of Express Warranty; Count XII – Breach of Implied Warranty; Count XIII – Violation of Consumer Protection Laws; County XIV – Gross Negligence; Count XV – Unjust Enrichment; Count XVI – Punitive Damages; and Count XVII – Discovery Rule & Tolling. *See* Short Form

Following this settlement, Ethicon and Johnson & Johnson filed a motion for summary judgment on all counts. In response, Ms. Mallow conceded that summary judgment was appropriate on Counts II, X, XI, XII, XIII, and XV, but argued that genuine issues of material fact remained under applicable Oklahoma law for Counts I, III, IV, V, VI, VII, VIII, IX, XIV, XVI, and XVII. While this motion for summary judgment was pending, the judge presiding over the multi-district litigation ordered each of the cases transferred to the appropriate U.S. District Court where venue was proper to continue. Ms. Mallow was at all relevant times a resident of Western Oklahoma and received her medical treatment in Edmond, Oklahoma, so this case was transferred to this Court.

Once before this Court, Ms. Mallow's case was placed on a trial schedule and the parties continued with settlement discussions. Shortly after this, Ms. Mallow's attorneys sought leave to withdraw due to a "fundamental disagreement as to the prosecution" of the case and "an irretrievable breakdown in communication."[5] The Court granted the withdrawal on October 28, 2021, and gave Ms. Mallow its customary admonition that the case would be proceeding with Ms. Mallow representing herself *pro se* if she did not retain new counsel within thirty days. Ms. Mallow did not retain new counsel and has been representing herself *pro se* since that time.

Shortly into the new year, Ethicon and Johnson & Johnson sought, and the Court granted, leave to file a supplemental motion for summary judgment on statute of limitations

---

Complaint (Dkt. 1), at 4–5. Counts XVI and XVII do not constitute independent causes of action.

[5] *See* Amended Motion to Withdraw as Attorney (Dkt. 116).

grounds. Ms. Mallow failed to respond on the merits, even after receiving extensions of time, so the Court now considers the matter fully briefed.[6]

### *Legal Standard*

Rule 56(a) of the Federal Rules of Civil Procedure requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute for trial before the fact-finder.[7] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[8] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[9] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could

---

[6] At various points, Ms. Mallow filed nonresponsive letters that accused the Court and the Defendants of acting in bad faith and recounted her case in a manner that was "incoherent, rambling, and include[d] everything but the kitchen sink." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). While the Court treated some of these letters as motions for extensions and granted extensions due to Ms. Mallow's *pro se* status, the Court is also mindful that even *pro se* parties must still abide by "the same rules of procedure that govern other litigants." *Pola v. Utah*, 458 F. App'x 760, 762 (10th Cir. 2012). Ms. Mallow has had ample time to either obtain new counsel or file her own substantive response to the Defendants' supplemental motion. The Court will not further delay decision on this motion simply because Ms. Mallow has refused to adopt either path.

[7] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[9] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

resolve the issue either way.[10] At the summary judgment stage, the Court views the facts and makes all reasonable inferences in the light most favorable to the nonmoving party.[11]

If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record" which show "that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute," or by showing "that [the movant] cannot produce admissible evidence to support the fact."[12] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts"[13] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether is so one-sided that one party must prevail as a matter of law."[14]

## *Discussion*

### Claims on which Summary Judgment is Conceded

Ms. Mallow initially raised her seventeen separate claims by checking available boxes on a short form complaint template. In her response to the original motion for summary judgment, she conceded summary judgment was appropriate on several of these

---

[10] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.
[11] *See Williams v. FedEx Corp. Services*, 849 F.3d 889, 896 (10th Cir. 2017).
[12] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.
[13] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).
[14] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52); *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

claims: Counts II, X, XI, XII, XIII, and XV.[15] Since Ms. Mallow did not and has not opposed Defendants' motion for summary judgment, summary judgment is appropriate on these conceded claims.

*Remaining Claims & Statute of Limitations*

When sitting in diversity, the Court applies the substantive law of the forum state—here, Oklahoma.[16] Ms. Mallow's remaining claims may be divided into three categories: claims of negligence, claims of fraud, and claims of products liability.

Each remaining category of claims is based on Oklahoma's substantive law and, therefore, subject to Oklahoma's statutes of limitations. Title 12, § 95 of the Oklahoma Statutes establishes that "civil actions for torts may only be brought within two years after the cause of action accrues."[17] This two-year statute of limitations applies to each category

---

[15] *See* Resp. in Opp. (Dkt. 57), at 1 n.1 ("Plaintiff does not oppose Ethicon's motion for summary judgment on her claims for manufacturing defect (Count II), negligent infliction of emotional distress (Count X), violation of consumer protection laws (Count XIII), breach of express warranty (XI), breach of implied warranty (XII), or unjust enrichment (Count XV).").

[16] *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). This includes Oklahoma's choice-of-law provisions. Here, Oklahoma's choice-of-law provisions indicate that Oklahoma substantive law applies to all of Ms. Mallow's claims. *See Childs v. Oklahoma ex rel. Oklahoma State Univ.*, 848 P2d. 571, 578 n.41 (Okla. 1993).

[17] *Fuchs v. Fleetwood Homes of Tx.*, 149 P.3d 1099, 1101 (Okla. Ct. Civ. App. 2006); *see also* Okla. Stat. tit. 12, § 95.

of Ms. Mallow's remaining claims: negligence claims,[18] products liability claims,[19] and fraud claims.[20] Accordingly, Ms. Mallow had two years from the date of her injury—the 2010 surgery—to bring her claims.

Normally, for purposes of statutes of limitations, "a cause of action accrues when the injury occurs."[21] But Oklahoma also observes the "discovery rule," so that injured parties who are initially unaware that an injury has been sustained have the same rights to sue as parties whose injury is immediately ascertainable.[22] The discovery rule provides that this two-year clock can be "tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury."[23] While the burden of proof that the statute of limitations bars an action falls on the defendant, when that burden is carried,

---

[18] *See Cabinet Solutions, LLC v. Kelley*, 288 P.3d 254, 256 (Okla. Ct. Civ. App. 2012) ("The statute of limitations period applicable to Cabinet's claim of negligence is two years.") (citing Okla. Stat. tit. 12, § 95(A)(3)); *see also AMC West Housing LP v. NIBCO, Inc.*, 2019 WL 4491331, at *4 (W.D. Okla. Sept. 18, 2019) ("The statute of limitations to be applied to Plaintiff's negligence claim is two years.").

[19] *See Fuchs*, 149 P.3d at 1101 ("Title 12 O.S.2001 § 95 states that civil actions for torts may only be brought within two years after the cause of action accrues. This statute also applies to products liability cases."); *see also Jacks v. Vanderbilt Mortgage & Finance, Inc.*, 2016 WL 5720835, at *1 (W.D. Okla. Oct. 3, 2016) ("Additionally, in Oklahoma, the statute of limitations on a products liability claim is two years.").

[20] *See McKamie v. Patterson Dental Supply, Inc.*, 2013 WL 6388565, at *3 (Dec. 6, 2013) ("Fraud claims, however, are subject to a two-year statute of limitations in Oklahoma, which begins to run after the discovery of the fraud.") (citing Okla. Stat. tit. 12, § 95(A)(3)); *see also Jeter v. Wild West Gas, LLC*, 2015 WL 5970992, at *7 (N.D. Okla. Oct. 14, 2015) ("Oklahoma has a two-year statute of limitations on fraud claims.").

[21] *Calvert v. Swinford*, 382 P.3d 1028, 1033 (Okla. 2016).

[22] *See id.*

[23] *Woods v. Prestwick House, Inc.*, 247 P.3d 1183, 1189 (Okla. 2011) (citing *Resolution Trust Corp. v. Grant*, 901 P.2d 807 (Okla. 1995)); *see also* Okla. Stat. tit. 12, § 95(A)(3) (noting that "the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud").

the plaintiff then bears the burden of proving that the discovery rule tolls accrual long enough to make the action within time. Here, the burden is on Ms. Mallow to prove that she did not know and, exercising reasonable diligence, had no reason to know of the injury until August 23, 2014—two years after she filed her case.

In her initial fact sheet, Ms. Mallow asserted that she first attributed her injuries to the Defendants in March of 2016, when physicians told her that her injuries could have been caused by the Prosima mesh. However, under Oklahoma law, an action does not accrue upon discovery of actual causal connection between injuries and a product unless the causal connection between particular injuries and that product was previously "beyond the pale of human knowledge."[24] In all other cases—where the potential causal connection between particular injuries and a product is "common knowledge"—the discovery rule tolls the clock only to when a plaintiff acquires "sufficient information which, if pursued, would lead to the true condition of things."[25]

As demonstrated by the record, the potential for Prosima mesh to cause injuries such as those alleged by Ms. Mallow was "common knowledge" well before March of 2016. In October of 2008, the Federal Drug Administration ("FDA") issued a public warning that certain mesh products—including the Prosima mesh—could cause complications such as the dyspareunia and dysuria experienced by Ms. Mallow.[26] In 2011, the FDA issued

---

[24] *Daugherty v. Farmers Co-op. Ass'n*, 689 P.2d 947, 950 (Okla. 1984) (distinguishing between cases where the potential for harm from a product was common knowledge and cases where the potential for harm from a product "was simply unknown by experts and laymen alike").
[25] *Id.* at 950–51.
[26] *See* 2008 FDA Public Health Notification (Dkt. 121, Ex. 7).

updated warnings to healthcare providers and patents that complications with Prosima mesh were "not rare" and could cause many of the injuries Ms. Mallow asserted.[27]

The record also clearly demonstrates that Ms. Mallow initially identified her dyspareunia and dysuria on October 13, 2011,[28] and directly discussed the mesh "falling out" and the desire to pursue a legal case on August 5, 2014.[29] Given this documented medical knowledge and the conditions Ms. Mallow complained of in 2011 and 2014, Ms. Mallow did possess "sufficient information which, if pursued, would lead" her to the conclusion that the Prosima mesh caused her injuries much earlier than her claimed realization in March of 2016. Even construing the facts in the light most favorable to Ms. Mallow, the evidence in the record shows that Ms. Mallow had sufficient knowledge so that, had she "exercised reasonable diligence," she could have identified the Defendants as the source of her injuries as early as 2011. Accordingly, the Court finds that the discovery rule tolls the statute of limitations only to October 13, 2011, or, at the latest, August 5, 2014. Under either option, the statute of limitations for the product liability claims expired before Ms. Mallow filed her suit.[30]

---

[27] *See* 2011 FDA Safety Communication (Dkt. 121, Ex. 8).

[28] *See* Office Visit Notes (Dkt. 121, Ex. 3), at 5–6.

[29] *See* Office Visit Notes (Dkt. 121, Ex. 4), at 2.

[30] This Court joins other district courts around the nation in ruling that the FDA notice provided sufficient information to trigger statute of limitations when plaintiffs had enough information that they could have discovered the causal link with reasonable diligence. *See, e.g.*, *Kelly v. Ethicon, Inc.*, 511 F. Supp. 3d 939, 953 (N.D. Iowa 2021) (holding that "had plaintiff investigated whether her [mesh] implant was causing her injuries some time in 2010 . . . her investigation would have been fruitful"), *aff'd*, 2021 WL 4998930 (8th Cir. Oct 28, 2021); *Hutchinson v. Boston Sci. Corp.*, 2020 WL 5752393, at *4 n.3 (D. Del. Sept. 25, 2020) (noting that "there was a known connection between pelvic mesh implants and the types of injuries that Plaintiff claims to have suffered"); *Tily v. Ethicon, Inc.*, 2020 WL

Ms. Mallow's arguments fares no better when the discovery rule is applied to her negligence and fraud claims. When applying "the medical negligence statute of limitations and the discovery rule," the Court looks to when the injury was known and when the plaintiff "acquired sufficient information by which she knew or should have known" that the alleged medical negligence caused the injury.[31] Although this can be a question of fact where reasonable minds might differ,[32] here the evidence is clear that Ms. Mallow refused to attend follow-up appoints with Dr. Smith, complained of complications causing dyspareunia and dysuria in 2011,[33] told her physician that the Prosima mesh "fell out" on August 5, 2014,[34] and even requested copies of her medical record to take to a lawyer.[35] The Court therefore finds that there can be no genuine dispute and that Ms. Mallow knew, or should have known, that her injuries may have been caused by medical negligence by at least August 5, 2014, if not before. For the same reasons, when considering Ms. Mallow's fraud claims, the Court finds that Ms. Mallow knew or should have known of the fraud she now alleges at least by August 5, 2014.[36] In both cases, this results in the Oklahoma statute

---

5369724, at *5 (E.D. Pa. Sept. 8, 2020) (finding it "indisputable that, had Plaintiff undertaken even minimal diligence . . . she would have discovered abundant facts and evidence to inform her of the source of her injury").

[31] *Lorton*, 261 P.3d at 1126.
[32] *See id.* at 1127.
[33] *See* Office Visit Notes (Dkt. 121, Ex. 3), at 5–6.
[34] *See* Office Visit Notes (Dkt. 121, Ex. 4), at 2.
[35] *See id.*
[36] In her response to the original motion to summary judgment, Ms. Mallow contended that the claim for fraudulent concealment operated as an additional tolling mechanism that delayed the running of the statute of limitations. However, under Oklahoma law, the doctrine of fraudulent concealment predated the discovery rule, and the case Ms. Mallow cited "is no longer good law because Oklahoma has since adopted the discovery rule in tort cases." *Szczepka v. Weaver*, 942 P.2d 247, 248 (Okla. Ct. Civ. App. 1997). Additionally,

of limitation beginning to run by at least August 5, 2014, and thus expiring before Ms. Mallow filed this action.

## *Conclusion*

The Supreme Court of Oklahoma has recognized that "[s]tatutes of limitation were not designed to help those who negligently refrain from prosecuting inquiries plainly suggested by the facts" and that "a reasonably prudent person is required to pursue his claim with diligence."[37] Here, the Court finds that there is no genuine dispute of material fact and that Ms. Mallow knew or should have known of her injuries by October 13, 2011, or, at the latest, August 5, 2014. The statute of limitations thus began to run on October 13, 2011, or, at the latest, August 5, 2014—resulting in Ms. Mallow's claims being time-barred when filed on August 23, 2016. Accordingly, the Defendants are entitled to judgment as a matter of law on all claims, and their Supplemental Motion for Summary Judgment (Dkt. 121) is **GRANTED**.

**IT IS SO ORDERED** this 21st day of March 2022.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

fraudulent concealment still only tolls the statute of limitations until a plaintiff knew or should have known that they might have a cause of action—here, the Court has already found that Ms. Mallow knew or should have known of her cause of action by August 5, 2014.

[37] *Daugherty*, 689 P.2d at 951.

11